RINDSKOPF, Appellant, vs. MYERS, Respondent.

*January 15 — January 30, 1894.*

*Debtor and creditor: Fraudulent conveyances: Instructions to jury: Badges of fraud: Payment of fair consideration by vendee: Notice of fraudulent intent: Evidence.*

1. An instruction that a sale of all a man's property when he is largely in debt naturally excites suspicion of fraud and is therefore evidence of fraud, is *held* to have been correct, when considered in connection with a further statement, immediately following, that

Rindskopf vs. Myers.

this and other acts instanced "are badges of fraud. They are not fraud, but may be considered, when they are proven to exist, by the jury, as facts and circumstances tending to show fraud."

2. An instruction that payment by the purchaser of a fair consideration was strong evidence of good faith and required clear evidence of fraudulent intent to overcome it, was properly refused as being an invasion of the province of the jury.

3. Where a sale is made with intent to defraud creditors, it is void, although the vendee had no actual knowledge or notice of such intent, if he had knowledge of facts and circumstances such as would put a reasonably prudent man upon inquiry, and such inquiry would have led to his ascertaining the truth.

4. A refusal to instruct the jury that there was no evidence to warrant a finding that there was a conspiracy to defraud the creditors of the vendor, is *held* not to have been prejudicial to the vendee in an alleged fraudulent sale, there having been no evidence tending to show such a conspiracy, no such suggestion in the general charge, and nothing to show that any such claim had been made.

5. Upon the cross-examination of the vendee it appeared that he had a bank book, but that he had not brought it to the trial. He not having been requested to bring it by the opposite party, the court properly refused to permit him to state, on his re-examination, why he had not brought the book.

APPEAL from the Circuit Court for *Wood* County.

This action was brought by the plaintiff to recover the value of the greater portion of a stock of goods sold and delivered by Hyman Nathan to the plaintiff, and seized a few days thereafter under writs of attachment in the hands of the defendant as sheriff of Clark county, in favor of Henry Benedict, a creditor of Hyman Nathan, on the ground that the sale to the plaintiff by Hyman Nathan was fraudulent and void as against his creditors. The record presents only certain alleged errors in the instructions of the court to the jury and its refusal to give certain others, it being conceded that the evidence in the case to support a verdict for the defendant is sufficient. Facts and circumstances were given in evidence, some of which amounted to badges or *indicia*

Rindskopf vs. Myers.

of fraud, properly calling for instructions on all the points hereinafter stated.

The court instructed the jury, among other things, that "(1) a sale or assignment of all a man's property when he is largely in debt naturally excites suspicion of fraud and is therefore evidence of fraud," and in this immediate connection added: "Or if made in unusual haste, and not in the manner in which men of ordinary care and prudence usually transact their business, or if made at greatly inadequate price, these and similar acts are badges of fraud. They are not fraud, but may be considered, when they are proven to exist, by the jury, as facts and circumstances tending to show fraud. (2) When a sale is made with intent to hinder, delay, or defraud creditors, it is void if the party receiving or purchasing the property so sold had knowledge of such intent; but this knowledge need not be actual, positive information or notice, but may be inferred from the knowledge by the purchaser of facts and circumstances sufficient to raise such suspicions as should put him upon inquiry as to the real situation, and which, if pursued, would lead him to the truth;" that, if the sale was with fraudulent intent on the part of Nathan, the jury should inquire if the plaintiff knew of such intent, "or had knowledge or notice of such facts and circumstances as to put him, as a reasonably prudent man, upon inquiry in relation thereto, and would have led to his ascertaining the truth;" that if Nathan intended to defraud his creditors, and if "the circumstances, situation and surroundings were such as to put an ordinarily prudent man on his guard, and the plaintiff had knowledge thereof, and purposely or negligently omitted to make such inquiries as an ordinarily prudent and cautious man would have made in his situation, which inquiries, if pursued, would have led to his ascertaining the truth as to Nathan's intent, then the plaintiff cannot recover."

The court refused to instruct the jury, at plaintiff's request, (1) that if the plaintiff had no knowledge of the intent on Nathan's part, and did not participate with him in such intent, then the jury should find for the plaintiff; (2) to avoid the sale the fraudulent intent must be known to, and entertained by, both buyer and seller, and both must be connected with the fraudulent design; (3) the payment by a purchaser of a fair consideration upon a sale of property, although not conclusive, is strong evidence of the good faith of the transaction, and requires clear evidence of fraudulent intent to overcome it.

On the cross-examination of Louis Rindskopf, a witness for the plaintiff, his brother, the court allowed defendant's counsel, against plaintiff's objections, to show that he (Louis) did not ask Nathan any questions as to whether he owed for his stock of goods or was pressed by creditors; that he asked him no questions at all,— made no inquiries as to his financial condition.   On the cross-examination of the plaintiff, it appeared that he had a bank book, and that it was in Milwaukee.   On re-examination his counsel asked him to state the reason he had, if any, for not bringing the book. The court ruled that the reason why he did not bring it was immaterial, unless requested to bring it, and even then it might be immaterial.   It appeared that no such request was made, and the court excluded the inquiry.

The jury found for the defendant, and the defendant had judgment, from which the plaintiff appealed.

For the appellant the cause was submitted on the brief of *R. J. MacBride.*   He contended, *inter alia,* that the sale of the whole of a man's property when he is largely in debt is not of itself evidence of fraud, but a circumstance to be considered by the jury with all the other facts in the case. *Bigelow v. Doolittle,* 36 Wis. 119; *Kerr v. Hutchins,* 46 Tex. 389.   When the purchaser has paid a valuable considera-

· tion, and it is sought to avoid the sale on account ·of his notice or knowledge of the fraudulent intent of the vendor, ·the question for the jury is whether he had notice or knowledge· of· the fraudulent purpose of the vendor, not whether he· had knowledge of facts that would put a reasonable man on inquiry.· *Parker v. Conner*, 93 N. Y. 118; *Stearns v. Gage*, 79 id. 102; *Farley v. Carpenter*, 27 Hun, 359·; *Coolidge v. Heneky*, 11 Oreg. 327; *Lyons v. Leahy*, 15 id. 8; *Carroll v. Hayward*, 124 Mass. 120; *Knower v. Cadden Clothing Co.* 57 Conn. 202; *Van Raalte v. Harrington*, 101 Mo. 602; *State ex rel. Salomon v. Mason*, 112 id. 304. `

· *James O'Neill*, for the respondent.

PINNEY, J.   1. The instruction, in substance, that the sale or assignment of all a man's property when he is largely in debt naturally excites suspicion of fraud and is therefore evidence of fraud, must be considered with the context.   The court had instanced this with some other like facts, saying: " This and similar acts are badges of fraud.   They are not fraud, but may be considered, when they are proven to exist, by the jury, as facts and circumstances tending to show fraud."   The jury were told that in this ·sense the particular fact or badge of fraud referred to was evidence to show fraud, but not that it was sufficient to prove it.   We think the jury could not have misunderstood the purport and meaning of the charge, and that, as explained, it was correct and is in accordance with what was held in *Bigelow v. Doolittle*, 36 Wis. 119, and *Pilling v.· Otis*, 13 Wis. 495.   The charge, in this and other respects, ·rendered it unnecessary to instruct the jury that they were ˙ not to infer an intent to defraud from the mere fact that Nathan sold his entire stock to the plaintiff.   The court had · said, in substance, that a sale of the entire stock of one, ·when largely in debt, would be evidence· or a badge of fraud, and that a person in failing circumstances might notwith-

Rindskopf vs. Myers.

standing sell and convey a good title to his property. This was sufficiently clear and favorable to the plaintiff.

2. The instruction asked by the plaintiff that payment by the purchaser of a fair consideration was *strong* evidence of good faith, and required *clear* evidence of fraudulent intent to overcome it, if given, would have been a clear invasion of the province of the jury, and was therefore properly refused. The effect of evidence of payment of such consideration, as well as what evidence would or would not suffice to overcome it, were questions depending upon all the facts and circumstances in evidence bearing upon the *bona fides* of the sale, and were to be decided by the jury and not by the court. *Bigelow v. Doolittle, 36* Wis. 119; *Lampe v. Kennedy,* 60 Wis. 110.

3. All other instructions excepted to, and the refusal to give those relevant to the case and not fairly embraced in the general charge, present, in substance, the single question, in somewhat varied phraseology, whether knowledge on the part of the purchaser of his vendor's intent in making the sale to hinder, delay, or defraud his creditors, must be actual, positive information or notice or belief of that fact, or whether, as the court instructed, that knowledge or notice of such intent might be inferred from knowledge on the part of the purchaser of facts and circumstances sufficient to raise such suspicions as to put him, as a reasonably prudent man, upon inquiry in relation thereto, and would have led to his ascertaining the truth; that if the circumstances, situation, and surroundings were such as to put an ordinarily prudent man on his guard, and he purposely or negligently omitted to make such inquiries as an ordinarily prudent and cautious man would have made in his situation, and which, if pursued, would have led to his ascertaining the truth as to his vendor's intent, in either case, in an action such as this, it would prevent a recovery by the purchaser.

The rulings of the court in the instructions given, and in refusing those asked, are certainly in accordance with the law as settled in this state nearly a quarter of a century ago, and since then frequently reiterated in clear and unmistakable terms, although a different view of the law has been and still is maintained in some of the states, in cases cited by the appellant's counsel. This conflict of decided cases is considered somewhat at length in Wait on Fraudulent Conveyances (secs. 374–379), and in Bump on the same subject (page 200), where the cases on both sides are collected, and the rule applied by the circuit court, and hitherto maintained in this state, is approved. In *Avery v. Johann*, 27 Wis. 246, 247, it was held that knowledge of such facts and circumstances as raised a suspicion in the mind of the purchaser, and did or ought to have put him upon inquiry, was sufficient, so that he purchased and paid at his peril; and the rule in *Atwood v. Impson*, 20 N. J. Eq. 150, in accordance with the charge in this case, is cited with approval. The rule was laid down with added vigor and clearness in *Hopkins v. Langton*, 30 Wis. 379, 381. To the same effect is *David v. Birchard*, 53 Wis. 495, 496. In *Brinkman v. Jones*, 44 Wis. 498, and *Helms v. Chadbourne*, 45 Wis. 61, in relation to sales of real estate, the court said: " We think the true rule is that notice must be held to be actual when the subsequent purchaser has actual knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of the right or title in conflict with that which he is about to purchase." And the conflict in the cases is noticed and considered by Mr. Justice TAYLOR in his opinion in the former case. The rule thus maintained was expressly approved in the circuit court of the United States for this circuit by HARLAN and BUNN, JJ., in *Bartles v. Gibson*, 17 Fed. Rep. 293, and in the *Case of Holladay*, 27 Fed. Rep. 849. The question was subse-.

quently before this court in *Hooser v. Hunt*, 65 Wis. 72, when many of the cases relied on by the appellant here were cited, but the court refused to reconsider the rule thus established in this state, and to which we adhere.

We think the rule was fairly expressed in the general charge, and that it justified the refusal to give the instructions requested, already noticed. It is a rule applicable alike to legal and equitable actions, whether the subject of the action is personal or real estate. One about to purchase under the circumstances stated is bound to stay his hand, and if he will not the fault is wholly his own. The question of fraud, and of notice of the intent to defraud, is still a question for the jury, who, when they find the facts, are to apply the rule and declare the consequence; and we fail to see in it anything in conflict with the statute making fraud, in cases such as this, a question of fact for the jury.

4. There was no evidence in the case to warrant the submission to the jury that there was any scheme or conspiracy on the part of Stumes, Hyman Nathan, Louis Rindskopf, and the plaintiff to defraud the creditors of Nathan, or tending to such a conclusion, and there was no such suggestion in any part of the general charge, nor anything to show that any such claim had been made; and therefore the refusal to instruct the jury that there was no evidence to warrant such a finding was not prejudicial to the plaintiff, and the testimony elicited from Louis Rindskopf, against the plaintiff's objection, had no tendency to establish any such conspiracy. We do not see any reason for saying that the plaintiff could have been injuriously affected by it.

5. As the plaintiff had not been requested by the defendant to bring his bank book to the trial, the court properly ruled that it was wholly immaterial why he omitted to do so. No sufficient reason appears for his entering upon any explanation on the subject.

It follows from these views that the judgment of the circuit court is correct and must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.

*Debtor and creditor: Fraudulent conveyance: Evidence.*