BLEILER, Appellant, vs. MOORE and another, Respondents.

*November 4 — November 24, 1896.*

*Debtor and creditor: Transfer of property to one creditor: Knowledge of fraudulent purpose: Instructions.*

The question being whether a transfer of property by an insolvent debtor to one of his creditors was fraudulent and void as to the others, an instruction to the effect that if the vendee had any knowledge or even well-founded suspicion that the vendor intended by the transfer of his property to hinder or delay some of his other creditors, that alone would be fatal to the vendee's title, was erroneous, actual participation in the fraudulent purpose being necessary to defeat the title of a *bona fide* vendee. *David v. Birchard,* 53 Wis. 492, disapproved.

APPEAL from a judgment of the circuit court for Green county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

This is an action of replevin. The plaintiff's son, William J. Bleiler, was indebted to the plaintiff in a considerable sum, and, becoming embarrassed, conveyed his real estate and personal property to his father in payment of his debt. The defendants, who were the sheriff and his deputy, levied an execution against William on the personal property so

transferred to the plaintiff. The plaintiff replevied. The defendants seek to justify under the execution. The issue was whether the sale of this property to the plaintiff was fraudulent as against creditors of William. There was verdict and judgment for the defendants, from which the plaintiff appeals.

*John M. Becker*, for the appellant, argued, among other things, that where a sale is made in payment of a debt due the purchaser, such purchaser differs from an ordinary purchaser in that he is not deemed a volunteer. Not being such, his knowledge of the vendor's fraudulent intent does not make him a party to it. *Brown v. Smith*, 7 B. Mon. 361; *Funk v. Staats*, 24 Ill. 632; *York Co. Bank v. Carter*, 38 Pa. St. 446; *Chase v. Walters*, 28 Iowa, 460, 469; *Kohn v. Clement*, 58 id. 589; *Jones v. Loree*, 37 Neb. 816; *McAllister v. Honea*, 71 Miss. 256; *Davis v. McCarthy*, 52 Kan. 116; *Hasie v. Connor*, 53 id. 713; *Hamilton-Brown Shoe Co. v. Whitaker*, 4 Tex. Civ. App. 380; *Byrd v. Perry*, 7 id. 378; *Bates v. Vandiver*, 102 Ala. 249; *Bray v. Ely*, 105 id. 553; *Furth v. Snell*, 6 Wash. 542. See, also, *Greene & B. Co. v. Remington*, 72 Wis. 648; *Gleason v. Day*, 9 id. 498; *Stevens v. Breen*, 75 id. 595.

*John D. Dunwiddie*, attorney, and *B. F. Dunwiddie*, of counsel, for the respondents.

NEWMAN, J. The decisive question is whether there was reversible error in the charge of the trial court. The appellant complains that the trial court, in substance, instructed the jury " that a sale made by a vendor with intent to hinder, delay, and defraud his creditors is void, if the vendee has knowledge of facts and circumstances such as should put a prudent man upon inquiry, by which he might find out the fraudulent purpose." This is alleged to be error. But this really states the rule applicable to a sale made by an insolvent debtor to a stranger with substantial

accuracy. The stranger is bound at least to refrain from knowingly obstructing the rights of creditors. But the case is different where a creditor in good faith takes the property of his debtor in payment of his honest debt. He is no mere volunteer or stranger. He is restricted merely to honesty. He may not purposely obstruct other creditors of his debtor, even to come by his own. But it is no fraud upon the other creditors, although he may know or believe that the debtor is giving his debt a preference for the purpose of avoiding the payment of other debts, and that other creditors will thereby fail to realize their claims,— provided, always, the purpose of the vendee is, *bona fide*, the realization of his debt, and he does not participate in the fraudulent purpose of his debtor; for, in order to avoid such a sale, both parties must participate in the fraudulent design. ˚ *Gage v. Chesebro*, 49 Wis. 486; *Norwegian Plow Co. v. Hanthorn*, 71 Wis. 529; *Erdall v. Atwood*, 79 Wis. 1; *Bannister v. Phelps*, 81 Wis. 256; *Barr v. Church*, 82 Wis. 382. *David v. Birchard*, 53 Wis. 492, which decides that "Where a mortgage is given to secure an honest debt, but with the intent to hinder, delay, or in any way put off the creditors of the mortgagor, it is void if the mortgagee had knowledge of such intent; and this knowledge need not be actual, but may be inferred from the knowledge of the mortgagee of facts and circumstances sufficient to raise such suspicions as should put him on inquiry,"— is entirely out of harmony with the decisions of this court, both before and since, and is not to be followed as an authority upon this question. Mere knowledge of the corrupt sentiment in the mind of his debtor, not shared by him, does not deprive the honest creditor of the right to accept the proffered payment or security of his just claim. It is to be inquired whether the charge was really obnoxious to this criticism. Bearing upon this point, the judge charged the jury as follows: "Was the chattel mortgage of March 14, 1893, made by William J. to his father,

the plaintiff, made with an intent to hinder, delay, or defraud the creditors of William J.? If it was, and you so believe and find from the evidence, then that chattel mortgage was void as to William J.'s creditors existing at the time it was made. And these judgment creditors had their debts, and those debts were existing at that time. Was the bill of sale of April 20, 1893, made by William J. and his wife to the plaintiff, made with the intent to hinder, delay, or defraud the creditors of William J.? If it was, and you so believe and find from the evidence, then that bill of sale is void as to the creditors of William J. existing at the time it was made. If you believe and find from the evidence that the conveyance of the 310 acres of land owned by William J., and made by William J. and wife to his father, was made with the intent to hinder, delay, or defraud creditors, then it is void as to the creditors of William J. existing at the time it was made. But a man in debt, or a man deeply involved in debt, may sell property, and the sale will be valid, if he acts in good faith. And a man owing more debts than he is able to pay in full may pay some debts, or secure their payment, even although this may have the effect of preventing others from getting their pay, provided such debtor and his creditor act in good faith. Any creditor has the same rights to have his debtor pay him that another has, and he has the same right to obtain security of his demand from his debtor that any other creditor has, and the law will uphold him in obtaining such payment or security for his debts, provided in so doing he acts honestly. And, even if his debtor intends to hinder, delay, or defraud some creditor in paying or securing one or more of his other creditors, that will not render the payment or security of the latter invalid unless they or he were privy to or participated in the fraud of such debtor. . . . In actions of this character, where it is claimed that a transfer and conveyance of real or personal property has been made to hin-

der, delay, or defraud creditors, there are two persons,
namely, the vendor and the vendee, whose fraudulent intent
might affect the sale and transfer. If a vendor is shown to
have had an intent to hinder, delay, or defraud creditors,
such intent would not affect the title of the vendee, pro-
vided he acted in good faith, and without previous notice
of the fraudulent intent of his grantor or vendor." And
near the close of the charge this took place: Defendants'
counsel said: "There is one thing I would like to call at-
tention to. Our supreme court have recently held that
when a sale is made with intent to defraud the creditors on
part of the vendor, it is void, although the vendee did not
have actual knowledge or notice of such intent, if he had
knowledge of facts and circumstances." Thereupon the
judge remarked: "Oh, there is no doubt about that. If a
party had a knowledge of facts and circumstances which
will put a prudent man on inquiry, so that he can find out
the fraud intended, it has the same effect as actual knowl-
edge. Of course, I should have given that charge if I had
been requested to, and do give it now." It seems almost
certain that the jury must have gone to the jury room with
the impression from this charge that, if the plaintiff had any
knowledge or even well-founded suspicion that his debtor
intended by the transfer to him of his property to hinder or
delay some of his other creditors, that alone would be fatal
to the plaintiff's title; for, though the rule had been once
stated with substantial accuracy negatively, it was in a con-
nection and in a manner not to attract particular attention
to this point. What transpired at the close of the charge,
connected with the request of counsel, was of a more strik-
ing character,— more likely to impress the jury,— and,
being the last, to be freshest in their minds in the jury
room. It is a question of some niceness, and in a proper
case should be explained with suitable care and clearness,
so that it may be fully understood by the jury. This

charge was well calculated to mislead the jury. Contradictory instructions must be always confusing to the jury; it is prejudicial error.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.